UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEANNA EVERETT aka Deanna Everett Whitley,<br><br>            Plaintiff,<br><br>        v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, formerly known as American General Assurance Company, an insurance company licensed to do business in the State of Idaho pursuant to Idaho Code, Title 41,<br><br>            Defendant. | Case No. 1:14-cv-00121-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

Before the Court is Defendant American General Life Insurance Company's Motion for Summary Judgment (Dkt. 18-1). The motion was argued on May 27, 2015, and taken under advisement. For the reasons explained below, the Court will grant Defendant's motion.

**BACKGROUND**

This case arises out of the passing of Mr. John Whitley, and his wife's efforts to collect under his accidental death insurance policy issued by Defendant, American General Life Insurance Company. The following facts and timeline of events are undisputed or, when disputed, taken in the light most favorable to Deanna Everett

Whitley, the plaintiff and non-moving party. See *Matsushita Elec. Indus. Co. v, Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

John Whitley was involved in an automobile accident on November 27, 2010 and broke his neck, sustaining a type II odontoid fracture. This injury was initially treated with a Miami neck brace and pain medications.

Prior to his car accident, Mr. Whitley had been scheduled to have cardiac surgery at the Mayo Clinic in Rochester, Minnesota. Mr. Whitley was approximately 76 years old at the time and had planned to undergo mitral valve replacement surgery in December 2010. However, it was determined that Mr. Whitley was not a good candidate, or did not need, the mitral valve replacement surgery.[1] But on February 25, 2011, the doctors at the Mayo Clinic elected to perform surgery for the neck injury sustained in the car accident which consisted of a posterior C 1-2 fusion with right iliac crest bone graft. Mr. Whitley stayed at Saint Mary's Hospital for approximately one week following his surgery.

While Mr. and Mrs. Whitley were flying home to Idaho on March 5, 2011, Mr. Whitley's heart decompressed, he fainted, and the plane was diverted to Pierre, South Dakota where Mr. Whitley was admitted to St. Mary's Healthcare Center. After spending the night at the hospital, Mr. and Mrs. Whitley returned home to Idaho, where Mr. Whitley was admitted to West Valley Medical Center in Caldwell, Idaho. Mr. Whitley

---

[1] Conflicting testimony exist as to whether the surgery was deemed not to be an option because of the accident or simply unnecessary because it would not help the patient.

was discharged 2 days later to home hospice care and died roughly one month later on April 6, 2011.

On April 29, 2011, Mrs. Whitley notified American General of her husband's death to begin the process of receiving benefits under the accidental death policy. The policy owned by Mr. Whitley had been in effect since July 15, 2005, and neither party disputes its authenticity. The policy provides that the amount of $100,000 will be distributed to the beneficiary if "[a] covered person suffers loss solely as a result of an accidental bodily injury," and "due proof of such loss [is] sent to American General." Complaint, Exhibit A, p. 3 (Accidental Death and Dismemberment Benefits). The policy further clarifies that "the accidental bodily injury must happen while the person is covered under the group policy and the loss must occur within 365 days after the date of the injury." *Id.* The policy provides several exclusions, most significantly an exclusion stating that "no benefits will be paid for any loss that results from or is caused directly, indirectly, wholly or partly by any of the following: ... 3. A physical or mental sickness or treatment of that sickness; ...." *Id.* at p. 6 (Accidental Death and Dismemberment Exclusions and Limitations).

American General responded to Mrs. Whitley's initial notice by asking for additional information, which Mrs. Whitley provided. Over the course of the following five months, information and documents were exchanged between the parties until October 11, 2011 when American General denied the claim. Mrs. Whitley then filed this lawsuit.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

American General gives two reasons why this Court should enter summary judgment against Mrs. Whitley.  First, it asserts that because Mr. Whitley died from natural causes, and not as the result of any accident, coverage was not available under the accidental death policy. Second, American General contends that because Mrs. Whitley did not provide timely proof of loss, she is not entitled to beneficiary distributions under the policy, nor is she entitled to attorney's fees for this litigation under Idaho Code § 41-1839. The Court will address each argument in turn.

### 1.    Cause of death

The parties dispute whether the injury Mr. Whitley suffered in the automobile accident caused his death, which in turn affects whether Mr.Whitley was covered by the accidental death and dismemberment policy. Mrs. Whitley contends that Mr. Whitley's

death was the result of the neck injury sustained during the accident. American General argues that because Mr. Whitley had a history of other physical ailments and sicknesses, including heart disease, the true cause of death was unrelated to the accident, and therefore subject to the sickness exclusion in the policy. Additionally, the death certificate indicates that the death was not an accident, demonstrating, in American General's opinion, the absence of a genuine issue of material fact that the death was not accidental.

To support her claim, Mrs. Whitely relies almost exclusively on the testimony of Dr. Walter L. Seale, who suggests that Mr. Whitley's death was the result of the car accident and not any other underlying factor. To determine whether Dr. Seale's opinion is admissible and supports Mrs. Whitley's claim, a short summary of the evidence is helpful here.

Mr. Whitley died on April 6, 2011. On April 29, 2011 Mrs. Whitley submitted a claim to American General for benefits under her husband's policy. On Oct 11, 2011 American General denied that policy. On March 29, 2012, Dr. Seale wrote a letter "To Whom It May Concern" opining that the cause of Mr. Whitley's death was the accident and subsequent neck injury he suffered. Dkt.24-3 Exhibit A. Counsel for Mrs. Whitley forwarded this letter to counsel for American General on June 5, 2014. *Id.* Counsel's letter explained that "[t]he doctor's letter is not part of the formal production being made as we understand the doctor's opinion will have to be introduced through his testimony and supporting documents but we did want you to be aware of its existence." *Id.*

After Mrs. Whitely filed her lawsuit, the Court set case management deadlines, including the deadline for disclosure of expert witnesses. Those deadlines were December 5, 2014 for Plaintiff's disclosures, January 5, 2015 for Defendant's disclosures, and January 19, 2015 for rebuttal disclosures. Dkt. 7, pg.6 a-c. The Court extended those deadlines by approximately one month pursuant to a stipulation of the parties – Plaintiff's to January 5, 2015, Defendant's to February 4, 2015, and rebuttal to February 19, 2015.

Mrs. Whitely submitted both an original disclosure (Dkt. 19-4, Exhibit 5) and an amended disclosure (Dkt. 19-5, Exhibit 6) by the appropriate deadline. Dr. Seale was only disclosed in the amended disclosure. That disclosure indicated that Dr. Seale was Mr. Whitley's treating cardiologist, and that Dr. Seale and two other treating physicians would testify to Mr. Whitley's medical history and cause of death. It said nothing else about Dr. Seale. After the disclosure deadline passed, Mrs. Whitley submitted an Affidavit of Dr. Seale, dated March 19, 2015. Dkt.24-2. It attached Dr. Seale's CV, and included the following six statements by Dr. Seale: (1) Dr. Seale specializes in cardiovascular disease; (2) Dr. Seale was Mr. Whitley's cardiologist for several years; (3) Mr. Whitley was preparing to undergo heart valve surgery when he suffered a neck fracture from the automobile accident; (4) The neck fracture was the predominant cause of Mr. Whitley's death; (5) The neck fracture and treatment of the fracture was the primary reason for Mr. Whitley's death; and (6) Heart disease did not much affect Mr.

Whitley's ability to survive his neck fracture. *Id.* These six statements are essentially what Dr. Seale said in his March 29, 2012 letter .

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any expert witness who may be called upon to testify. Specifically, there are two kinds of expert witnesses and two kinds of disclosure.

A Rule 26(a)(2)(B) expert, is an expert "retained or specifically employed to provide expert testimony in the case;" he or she must be disclosed in a timely manner; and the disclosure "must be accompanied by a written report – prepared and signed by the witness." Fed.R.Civ.P. 26(a) (2)(B). The report must contain certain information outlined in Rule 26(a)(2)(B) (i-vi).

By comparison, a Rule 26(a)(2)(C) expert is an expert not "retained or specifically employed to provide expert testimony in the case," but still expected to offer expert testimony.  Such experts typically had some direct involvement in a case, and because of their duties or employment were required to form opinions in the course of their involvement.  For example, a law enforcement officer who formed opinions about the cause of an automobile accident which they investigated, or a physician who formed opinions in the course of rendering medical treatment, would qualify as 26(a)(2)(C) experts.  Such an expert must nevertheless be disclosed in a timely manner, but is not required to submit a written report. However, in disclosing such an expert, counsel must include with the disclosure, a description of the "subject matter on which the witness is expected to present evidence" Fed.R.Civ.P. 26 (a)(2)(C) (i) and give a "summary of the

facts and opinions to which the witness is expected to testify." Fed.R.Civ.P. 26 (a)(2)(C) (ii).

Dr. Seale does not qualify as a Rule 26(a)(2)(B) expert because he was not retained or specifically employed to provide expert testimony, and he failed to produce the required written report. Fed.R.Civ.P. 26(a)(2)(B). Thus, he can only testify and offer expert testimony if he qualifies as an expert under 26(a)(2)(C). For several reasons, the Court concludes that he does not satisfy the requirements of the Rule.

First, the affidavit with the six enumerated areas of testimony was a very late disclosure. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed.R.Civ.P. 37(c)(1). Mrs. Whitley gives no substantial justification for the late disclosure. Moreover, it was not harmless – at this point discovery is closed and rebuttal expert deadlines have passed. Thus Defendant has no time to address Dr. Seale's affidavit.

Second, the original disclosure states only that Dr. Seale was Mr. Whitley's treating cardiologist, and that he would testify to Mr. Whitley's medical history and cause of death. But he gives no specific information about Mr. Whitley's medical history, nor does he explain the cause of death. This does not satisfy the requirement that a Rule 26(a)(2)(C) provide the "subject matter on which the witness is expected to present

evidence" and a "summary of the facts and opinions to which the witness is expected to testify" Fed.R.Civ.P. 26 (a)(2)(C) (ii).

The March 29, 2012 letter also is not a proper disclosure qualifying Dr. Seale as an expert witness. Mrs. Whitley's counsel himself explained that the letter was not a part of discovery, and more importantly, never indicated that it should be regarded as a disclosure of any sort. In his letter to opposing counsel enclosing Dr. Seale's letter, he explained that "[t]he doctor's letter is not part of the formal production being made as we understand the doctor's opinion will have to be introduced through his testimony and supporting documents but we did want you to be aware of its existence." (Eismann Aff., Ex A, Dkt 24-3). In fact, at oral argument, counsel explained that sending the letter was simply a courtesy. Thus, the letter does not qualify as a disclosure.

Additionally, Mrs. Whitley's contention that Dr. Seale is exempt from the disclosure rules because he was a treating physician is without merit. "[A] treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). Dr. Seale sent the letter opining to the cause of death just shy of one year after Mr. Whitley's passing and at Mrs. Whitley's request. *Seale Depo.,* Dkt. 32-4, p.70. His opinion was formed in response to her request; not during the course of treating Mr. Whitley. *Id* at p.72-3. Furthermore, as Mr. Whitley's cardiologist, Dr. Seale had no occasion to conduct an autopsy or determine

Mr. Whitley's cause of death during his treatment of Mr. Whitley. Accordingly, Dr. Seale cannot testify as a treating physician about Mr. Whitley's cause of death.

Next, Mrs. Whitley argues that the matters discussed above are simple errors or minor oversights that she should be allowed to correct. That simply is not accurate. Mrs. Whitley wholly failed to comply with the expert disclosure requirements of the Rule 26. And "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial or on motion of any information that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing Fed.R.Civ.P. 37(c)(1)).

Finally, upon Plaintiff's request, the Court allowed the parties to supplement the record with deposition testimony of the physicians. Plaintiff provided the Court with such deposition testimony, and argued that it supports her assertion that the accident was the predominant cause of Mr. Whitley's death. There is deposition testimony from Dr. Seale indicating that he believed the neck fracture was the predominant cause of death. The problem for Plaintiff is that this testimony does not cure the defects outlined above disqualifying Dr. Seale from testifying. The fundamental problem explained in detail above is still that Dr. Seale may not testify as an expert or as a treating physician. For these reasons, the Court will exclude Dr. Seale's testimony.

In turn, the Court will grant summary judgment for American General. American General has provided the Court with evidence, undisputed by anyone other than Dr. Seale, that Mr. Whitley died from "acute pulmonary edema, end stage systolic heart

failure, and ischemic cardiomyopathy," as stated on his death certificate. Dkt. 19, Exhibit A. Idaho Code states that "[a]ny certificate filed in accordance with the provisions of this chapter and the regulations prescribed by the board [i.e., any vital statistics records], or any copy of such records or part thereof, duly certified by the state registrar, shall be prima facie evidence of the facts recited therein." I.C. § 39- 274. *See also, Corey v. Wilson*, 454 P.2d 951, 953-54 (1969) (holding that a death certificate was admissible as evidence as to cause of death). Additionally, rule 803(9) of the Federal Rules of Evidence specifically allows the admission of public records of vital statistics such as birth, marriage, and death as non-hearsay evidence. From the information before the Court, it is clear that the car accident did not cause Mr. Whitley's death. Accordingly, Because Mr. Whitley's death was not a result of an accident, coverage was not available under the accidental death policy.

**2.      Timely proof of loss**

American General also contends that there is no coverage because the proof of claim was not filed in a timely manner. The time period specified within the contract reflects that of Idaho Code § 41-2111, which requires a proof of loss be submitted within 90 days of the loss, but no "later than one year from the time proof  is otherwise required". *I.C.* §41-2111.

Here, that means Mrs. Whitley needed to provide proof of loss no later than July 4, 2012. American General does not dispute that Mrs. Whitley submitted a proof of loss claim on or about July 11, 2011, roughly one full year before the deadline. American

General argues that the proof of loss did not show that Mr. Whitley had suffered a "covered loss" (i.e. that the loss was the result of an accident). That is why American General asked for a new proof of loss, which was never submitted. Although somewhat unnecessary given the Court's conclusion above on the cause of death, American General is right that no sufficient proof of loss has been submitted. Accordingly, this is another reason summary judgment will be granted in favor of American General.

**ORDER**

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment (Dkt. 18-1) is **GRANTED**.

2.      The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: July 31, 2015

B. Lynn Winmill
Chief Judge
United States District Court